# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALVIN B. TRUESDALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1332 (GK) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff, a federal inmate proceeding *pro se,* brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff challenges the disposition of his FOIA requests by the Bureau of Alcohol, Tobacco and Firearms ("ATF") and the Executive Office for United States Attorneys ("EOUSA"), and the disposition of document referrals by the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Administration ("DEA"), the Internal Revenue Service ("IRS"), and ATF.[1] Defendant has filed a motion for partial summary judgment and summary judgment. Plaintiff has filed oppositions to Defendant's motions and a cross-motion for summary judgment. Based on the undisputed facts, the applicable law, and the parties' submissions, the Court will grant the Defendant's motions.

---

[1] On June 8, 2004, the Court dismissed all the named Defendants except the United States Department of Justice ("DOJ").

1

**Background**

<u>Executive Office for United States Attorneys</u>

On October 15, 1996, Plaintiff sent a FOIA request to the EOUSA for all files concerning

his  cases, including, but not limited to

> [A]ll Confidential Informant(s) Statement made during the debriefing sessions with
> government and local agents, FBI investigative reports, Property Sheets, Lab Reports, Files,
> Documents, Agents Notes, Dossier, Tapes and other recordings, Transcripts, Report
> Statements, Notes Memo and other  Informative Materials or Data that may be av[a]ilable
> including all Investigative Records compiled for Law Enforcement purposes not exempt as
> per Amendments in force at the time; relative to State and Federal investigations that led to
> the  Federal Case# Misc 2450-P and Federal Indictment# 3:92CR34-1-P, Letters written and
> received with the requestor as the subject, all correspondence from all law enforcement
> agencies is incorporated by reference.

Defendant's Motion for Partial Summary Judgment ("Deft.'s Part. Mot."), Declaration of John F.

Boseker ("Boseker Decl."), Exhibit ("Ex.") A.  Plaintiff also requested a waiver of the processing

fees. *Id.*  The EOUSA denied Plaintiff a fee waiver because he had not demonstrated the release of

the requested information would provide a public benefit.  *Id.*, Ex. B.  In response, Plaintiff agreed

to pay $25.00 in processing fees. *Id.*, Ex. C.  Plaintiff also informed the EOUSA that he was

prosecuted in the Western District of North Carolina.  *Id.*, Ex. E.

On February 4, 1997, the United States Attorney's Office for the Western District of North

Carolina notified the EOUSA that Plaintiff's appeal of the denial of his motion pursuant to 28 U.S.C.

§ 2255 was pending in the United States Court of Appeals for the Fourth Circuit.  Boseker Decl.,

¶ 12.  As a result, on February 7, 1997, the EOUSA notified Plaintiff that his requested records were

being withheld pursuant to FOIA Exemption 7(A) and the Privacy Act, 5 U.S.C. § 552a(j)(2).  *Id.*,

Ex. G.

Plaintiff appealed this decision to the Office of Information and Privacy ("OIP") on February

15, 1997. *Id.*, Ex. H.  OIP notified Plaintiff on December 21, 1998 that because circumstances had changed, it was no longer appropriate for the EOUSA to withhold the records requested in their entirety. *Id.*, Ex. J.  The EOUSA agreed to further process Plaintiff's request. *Id.*

On January 25, 1999, the EOUSA notified Plaintiff that the U.S. Attorney's Office in the Western District of North Carolina had located approximately 6500 pages of records responsive to his request. *Id.*, Ex. L.  The EOUSA also stated that the estimated processing fee would be at the minimum $640.00. *Id.*  The agency stated that if Plaintiff wished for it to proceed with his request, he had to agree to pay the necessary fee or narrow his document request to specific categories to lower the costs. *Id.*

Plaintiff responded to this letter on January 28, 1999, requesting a fee waiver or, in the alternative, to pay the $640.00 from the income he would earn while incarcerated. *Id.*, Ex. M. Plaintiff also asked the EOUSA to provide an index of categories of the records so that he could possibly modify the scope of his request. *Id.*  The EOUSA advised Plaintiff on November 10, 1999 that due to the volume of the responsive records his request could take up to nine months for the agency to process. *Id.*, Ex. O.

On December 3, 1999, the EOUSA sent Plaintiff an index of records maintained by the U.S. Attorney's Office in the Western District of North Carolina. *Id.*, Ex. Q.  The EOUSA also informed Plaintiff that his fee waiver request based on his indigency was denied. *Id.*  Plaintiff was again advised of the applicable fees and the EOUSA stated that it would send Plaintiff 350 pages of records based on a $25.00 fee payment if Plaintiff did not respond within 30 days. *Id.*

Plaintiff sent the EOUSA a response on December 16, 1999, stating that he wanted the entire 6500 pages processed by the agency. *Id.*, Ex. R.  The EOUSA again informed Plaintiff that he must

pay the $640.00 fee prior to the release of the records.  *Id.*, Ex. S.  Plaintiff sent the agency three letters between March 26, 2001 and June 26, 2001, but the correspondence did not address the fee issue.  *Id.*, Exs. T, U, V.

On December 11, 2001, the EOUSA informed Plaintiff that it had received approximately 4600 pages of records from the Western District of North Carolina.  *Id.*, Ex. W.  This total excluded court-filed public documents and grand jury material.  *Id.*  The EOUSA stated that it had only 735 pages to release because over 3300 pages originated with other agencies and had to be referred to those agencies for processing, and 534 pages were either exempt from disclosure or duplicate pages.  *Id.*  As a result, the agency stated that Plaintiff had to remit $58.50 before the records would be released to him.  *Id.*  The EOUSA advised Plaintiff that failure to pay the fee within 30 days would result in the closing of his case.  *Id.*

The EOUSA received Plaintiff's payment on April 8, 2002.  *Id.*, Ex. CC.  On May 24, 2002, the EOUSA sent Plaintiff records from the Western District of North Carolina responsive to his request.  *Id.*, Ex. EE.  The agency released 280 pages in full, 364 pages in part, and withheld 98 pages in full.  *Id.*  Plaintiff was informed that the EOUSA was withholding records in full or in part based on FOIA Exemptions 2, 3, 5, 7(A), (C), (D), (E), (F), and the Privacy Act, 5 U.S.C. § 552a(j)(2).  *Id.*  The EOUSA also stated that 3,344 pages of records had originated with other government agencies and that it had referred the records to the IRS, FBI, ATF, and DEA for review. *Id.*

On June 17, 2002, Plaintiff appealed the EOUSA's decision to the OIP.  *Id.*, Ex. GG.  With the exception of the reliance on Exemption 7(E), OIP affirmed the EOUSA's action on Plaintiff's records request on March 17, 2003.  *Id.*, Ex. II.

Federal Bureau of Investigation

The EOUSA referred 434 pages of materials responsive to Plaintiff's FOIA request to the FBI on May 24, 2002.  Deft.'s Part. Mot., Declaration of David M. Hardy ("Hardy Decl."), Ex. B. After processing the request, the FBI released to Plaintiff 2 pages in full, 25 pages  in part, and withheld  63 pages in full.  *Id.*, Ex. C.  The FBI withheld certain records pursuant to FOIA Exemptions 2, 7 (C), (D), and (F).  *Id.*  The agency determined that 337 pages of the materials were duplicates.  *Id.*, Ex. F.

Plaintiff appealed the FBI's decision on September 4, 2002 to the OIP.  *Id.*, Ex. D. The FBI's action was affirmed by OIP on May 20, 2003.  *Id.*, Ex. F.


Bureau of Alcohol, Tobacco and Firearms

ATF received a direct request from Plaintiff and a referral from EOUSA based on Plaintiff's request to that component of DOJ.  On August 15, 1996, Plaintiff sent a FOIA/Privacy Act request to ATF that was identical to the request made to the EOUSA.  Deft.'s  Part. Mot., Declaration of Averill P. Graham ("Graham Decl."), Ex. A.[2]  In response  to a letter from ATF, Plaintiff remitted $60.00 for the processing fee.  *Id.*, Ex. C.

On January 13, 1997, ATF released to Plaintiff 86 partially redacted pages and withheld 107 pages in full pursuant to FOIA Exemptions 7 (C) and (D).  *Id.*, Ex. P.  ATF informed Plaintiff that the agency was unable to locate two response files at the Federal Records Center.  *Id.* Plaintiff was also advised that certain records were being referred to the IRS, FBI, and DEA for processing.  *Id.*  Plaintiff's appeal of this decision was denied by ATF's Assistant Director, Liaison

---

[2] Plaintiff's request to the EOUSA is attached as Exhibit A to the Boseker Declaration.

and Public Affairs, on April 22, 1997. *Id.*, Ex. U.

The EOUSA referred to ATF 338 pages of records that it had discovered were responsive to Plaintiff's request on June 3, 2002. *Id.*, Ex. V. ATF referred 25 pages of these records to the FBI. *Id.*, Ex. X. On July 3, 2002, ATF released to Plaintiff 152 partially redacted pages. *Id.*, Ex. Y. ATF cited FOIA Exemptions 2, 7 (C) and (D) as bases for it withholding material. *Id.* ATF also informed Plaintiff that he had to remit $10.40 for 52 pages of the released records. *Id.* Plaintiff's appeal of this action was denied by the ATF's Assistant Director, Public and Governmental Affairs, on October 21, 2002. *Id.*, Exs. Z, FF, KK.


Drug Enforcement Administration

On May 24, 2002, the EOUSA referred to DEA 28 pages responsive to Plaintiff's FOIA request to the EOUSA. Defendant's Motion for Summary Judgment on Documents Referred to DEA and IRS (Deft.'s Ref. Mot."), Declaration of Leila I. Wassom ("Wassom Decl."), Ex. A. On July 10, 2002, DEA released to Plaintiff portions of one page and withheld 25 pages in their entirety pursuant to FOIA Exemptions 2, 7 (C), (D), and (F), and PrivacyAct exemption (j)(2). *Id.*, Ex. F.[3] Plaintiff appealed this decision and DEA's action was affirmed by the OIP on February 13, 2003. *Id.*, Exs. G, H.

In addition to the EOUSA referral, DEA decided to construe Plaintiff's request for investigative information about himself as one to the DEA directly. Wassom Decl., ¶¶ 18-19. DEA found 64 pages of material responsive to Plaintiff's request. *Id.*, ¶ 19. DEA referred 35 pages to the IRS. *Id.*, ¶ 20. In response, the IRS recommended to DEA that the information be withheld

---

[3] DEA determined that two of the referred pages were duplicates. Wassom Decl., ¶ 10.

pursuant to FOIA Exemption 6.  *Id.*, ¶ 21.  On February 10, 2005, DEA released to Plaintiff portions of 26 pages and withheld 38 pages in their entirety based on Exemptions 7 (C),(D) and (F)*,* and Privacy Act exemption (j)(2). *Id.*, ¶ 22.[4]

On July 7, 2004, ATF referred two pages of records responsive to Plaintiff's request to DEA. *Id.*, ¶ 23.  On February 10, 2005, DEA informed Plaintiff that it was withholding the two pages in their  entirety pursuant to Exemptions 2, 7 (C) and (F).  *Id.*, ¶ 24.

Internal Revenue Service

On May 24, 2002, the EOUSA forwarded Plaintiff's FOIA request and 2309 pages of records to the IRS.  Deft.'s Ref. Mot., Declaration of Charles B. Christopher ("Christopher Decl."), ¶ 4.  The IRS informed Plaintiff on January 22, 2003 that the processing of the first 100 pages of his request would be free of charge, but that the estimated fees for the remaining documents could be up to $448.00.  *Id.*, Ex. C.  Plaintiff responded to the IRS on March 5, 2003, stating that he was willing to pay the processing fees in installments.  *Id.*, Ex. D.  The IRS informed Plaintiff that a valid FOIA request required a commitment by the requestor to pay the required fees in full and that the IRS does not accept installment payments.   Christopher Decl., ¶ 11.

The IRS sent Plaintiff a letter on February 18, 2005 stating that 2309 pages could be immediately released upon Plaintiff's payment of the applicable fees.  *Id.*, Ex. G.  IRS redacted from these pages the dates of birth, social security numbers, telephone numbers and addresses of third parties pursuant to FOIA Exemption 6.  *Id.*  The IRS released the first 100 pages of responsive documents to Plaintiff free of charge.  *Id.* ___

_____

[4] The present action was filed on June 18, 2003.

**Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56 (c).   Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party.   *Anderson*, 477 U.S. at  255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).   The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248.   The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).   Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

The mere existence of a factual dispute by itself, however, is not enough to bar summary judgment.   The party opposing the motion must show that there is a genuine issue of *material* fact.

*See Anderson*, 477 U.S. at 247-48.  To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving party.  *See id.; Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F.Supp. 477, 481 n. 13  (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  Agency affidavits or declarations must be "relatively detailed and non-conclusory . . ." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents."  *Id.* (internal citation and quotation omitted). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)(internal citation and quotation omitted).

**Discussion**

<u>Executive Office for United States Attorneys</u>

*Adequacy of the Search*

To obtain summary judgment on the issue of the adequacy of the search for records under FOIA, an agency must show "viewing the facts in the light most favorable to the requester, that . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA.  *Id.* at 127.  The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Oglesby*, 920 F.2d at 68.

The Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results.  *Weisberg v. DOJ*, 745 F.2d at 1485.  An agency's failure to find a particular document does not undermine the determination that the search was adequate.  *Wilber v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1987).

10

Plaintiff's request to the EOUSA sought all records regarding his criminal prosecution in the Western District of North Carolina. The United States Attorney's Office in that district conducted two searches for records using a computer case tracking system, TALON. Boseker Decl., ¶ 49. The database allowed the government to retrieve records based on Plaintiff's name, the office file jacket number, and the district court case number. *Id.* The search yielded approximately 6500 pages of records. *Id.* The agency conducted a third search in order to produce an index of documents for Plaintiff. *Id.* Plaintiff requested an index in order to possibly assist him in reducing the parameters of his search and thereby reducing his processing fees. *Id.*

The ATF searched for the records requested by Plaintiff through the Treasury Enforcement Communications System ("TECS"), a computerized information system that identifies individuals involved in violations of federal law. Graham Decl., ¶ 60. TECS is linked to the criminal databases of other federal law enforcement agencies and has the capability of providing direct communication with state and local agencies engaged in criminal investigations. *Id.* Utilizing this system, ATF located all records related to Plaintiff in the Charlotte, North Carolina ATF Field Division. *Id.*, ¶ 61.

The DEA searched for responsive records in its Investigative Reporting and Filing System ("IRFS") which contains all administrative, general and investigative files compiled by DEA. Wassom Decl., ¶ 25. The index to IRFS, the Narcotics and Dangerous Drugs Information System ("NADDIS") identifies individuals by name, social security number, and/or date of birth. *Id.*, ¶ 27. The NADDIS provides a means for obtaining DEA investigative files. *Id.* Using this system, DEA located five investigative files related to Plaintiff. *Id.*, ¶ 28.

It is apparent from the declarations submitted by the EOUSA , ATF, and DEA that it has

made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C. 1996)(citing *Oglesby*, 920 F.2d at 68). As such, these searches for Plaintiff's requested records was adequate to fulfill Defendant's obligations under the FOIA.

*Exemption 2*

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d. 1051, 1073-74 (D.C. Cir. 1981). Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information). *Schiller v. NLRB*, 964 F.2d 1205, 1206 (*D.C.* Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

The ATF and DEA withheld internal administrative codes used in criminal law enforcement databases under this exemption. *See* Graham Decl., ¶ 35; Wassom Decl., ¶ 45. ATF databases allow the agency to obtain information about criminals. Graham Decl., ¶ 38. The withheld data relates to the software applications identifying how records are retrieved and the routing codes. *Id.* Access to this information would allow individuals to circumvent the computer system and thus interfere

12

with law enforcement operations.  *Id.*  Access to the DEA codes would enable individuals to avoid detection and apprehension.  Wassom Decl., ¶ 47. For these reasons, ATF and DEA properly withheld the records.

## Exemption 3

Under this exemption, the EOUSA withheld information regarding a grand jury subpoena and grand jury transcripts. *See* Boseker Decl., ¶ 53. FOIA Exemption 3 covers records that are "specifically exempted from disclosure by statute . . .  provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).  Rule 6(e) qualifies as a statute under this exemption because it was affirmatively enacted by Congress.  *Fund for Constitutional Gov't v. National Archives and Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981); *Maydak v. Dep't of Justice*, 254 F.Supp.2d 23, 42 (D.D.C. 2003).

Federal Rule of Criminal Procedure 6(e)(2) prohibits disclosure of matters occurring before a grand jury.  *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998).  FOIA Exemption 3 permits the withholding of materials that, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or directions of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir.)(*en banc*), *cert. denied*, 449 U.S. 993 (1980)).   Grand jury subpoenas and transcripts are exempt from disclosure. *See Lopez v. Dep't of Justice*, 393 F.3d 1345, 1350 (D.C. Cir. 2005); *Dipietro v. Executive Office for U.S.*

*Attorneys*, 357 F.Supp. 2d 177, 183 (D.D.C. 2004).  The EOUSA properly withheld these records.

### Exemption 5

The FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5).  The exemption allows an agency to withhold materials that would be privileged from discovery in civil litigation.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Tax Analysts  v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).  Exemption 5 encompasses three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine.  *Id.*

The documents the EOUSA withheld under this exemption are: an Assistant U.S. Attorney's handwritten notes prepared in the investigation and prosecution of Plaintiff and other individuals, including diagrams, time lines, lists of individuals involved in drug trafficking, and notes of evidentiary value, and a letter from one prosecutor to another made in anticipation of the prosecution of third parties.  Boseker Decl., ¶ 56; Vaughn Index, Documents 16, 17.  In addition, documents were withheld because they involved trial preparation and strategy, evaluations and opinions regarding individuals involved in Plaintiff's criminal case, and communications between  federal and state agencies discussing the possible prosecution of Plaintiff.  *Id.*, ¶¶ 57, 58.

The Court finds that these records are protected by the deliberative process and attorney work product privileges.  As such, the records are exempt from disclosure.

### Exemption 6

The IRS relies on FOIA Exemption 6 to justify its redactions of the social security numbers, telephone numbers, addresses, and dates of birth of third parties in the agency's records.  *See*

Christopher Decl., ¶¶ 14-15. This exemption concerns the privacy interests of third parties and requires the Court to balance their privacy interests against the public interest in disclosure.  *See National Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773-75 (1989).  Exemption 6 prohibits the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." *See* 5 U.S.C. § 552(b)(6).  This exemption protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure. *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1980).  Courts have broadly interpreted the term "similar files" to include most information applying to a particular individual. *Kidd v. United States Dep't of Justice*, 362 F.Supp. 2d 291, 296 (D.D.C. 2005).

In cases involving personal data on private citizens in law enforcement records, "the privacy interest ... is at its apex." *Reporters Committee*, 489 U.S. at 780.  For this reason, the categorical withholding of information identifying third parties in law enforcement records is ordinarily exempt from disclosure. *See SafeCard Services*, 926 F.2d at 1206.  As Plaintiff has  offered no public interest to counterbalance these privacy considerations, the IRS's redactions were proper.

*Exemption 7 (C)*

Exemption 7 (C) of the FOIA protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of the individual mentioned in the record against the public's interest in disclosure.  *Beck v. Dep't of*

*Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).  It is the "interest of the general public, and not that of the private litigant" that the court considers in this analysis.  *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981) (citing *Ditlow v. Shultz*, 517 F.2d 166, 171-72 (D.C. Cir.1975)).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  Once a privacy interest is identified under Exemption 7 (C), the FOIA records requestor must establish that (1) the public interest is a significant one; and (2) the information is likely to advance that interest.  *Favish*, 541 U.S. at 172. The requestor must provide evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred.  *Id.* at 174.  The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

The EOUSA invokes Exemption 7(C) to protect the identities and personal information of third parties and the identities of those involved in the investigation and prosecution of Plaintiff's criminal case, including federal agents, other government employees, and local law enforcement personnel.  Boseker Decl., ¶¶ 60, 62.  The EOUSA asserts that disclosure of this information could result in unlawful efforts to gain access or information about the third-parties, subjecting them to harm, harassment, or unwanted exposure and publicity from being connected to a criminal case.  *Id.*, ¶ 60.  Regarding the government officials, the EOUSA contends that disclosure of identifying information could seriously impede future law enforcement efforts and expose these individuals to

harassment or other harm.  *Id.,* ¶ 62.

The FBI also withheld documents under this exemption.  The agency withheld the following information: (1) names and identifying information of FBI Special Agents and support personnel; (2) names and identifying information of third parties who were interviewed during the investigation of Plaintiff's case; (3) names and identifying information of local law enforcement personnel; (4) names and identifying information of third parties mentioned in FBI records, but who were not of investigative interest; and (5) names and identifying information of non-FBI federal government agents and employees.  Hardy Decl., ¶¶ 20-29.  The FBI asserts that release of this information would subject the named individuals to hostility, harassment, and intimidation.  *Id.*, ¶¶ 21-23, 26, 28-29.  The agency further asserts that Plaintiff's criminal activities involved gang-related drug trafficking and the use of violence.  *Id.*, ¶¶ 20, 26.  The ATF and DEA withheld the same types of records on the bases cited by the FBI.  *See* Graham Decl., ¶¶ 43-51; Wassom Decl., ¶¶ 51-52.

The deletion of the names and identifying information of federal, state and local law enforcement personnel has been routinely upheld.  *See Lesar*, 636 F.2d at 487 (finding legitimate interest in preserving identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F.Supp. 1, 3 (D.D.C. 1995)(possibility of animosity toward  FBI agents outweighed any possible benefit of disclosure), *aff'd in relevant part,* 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  In addition, the names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files have been consistently protected from disclosure for the reasons Defendant asserts here.  *See Perrone v. FBI*, 908 F.Supp. 24, 26 (D.D.C. 1995) (citing *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 779);

17

*Baez v. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980); *Branch v. FBI*, 658 F.Supp. 204, 209

(D.D.C. 1987). With respect to a cooperating witness, our court of appeals has stated: "'[e]xemption

7©) takes particular note of the strong interest of individuals, whether they be suspects, witnesses,

or investigators, in not being associated unwarrantedly with alleged criminal activity." *Fitzgibbon*

*v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779,

781 (D.C.Cir.1990)) (other citation and internal quotation marks omitted); *see also Computer*

*Professionals for Social Responsibility v. United States Secret Serv.*, 72 F.3d 897, 904 (D.C.

Cir.1996) ("records contain[ing] the names of informants, witnesses, and potential suspects who are

relevant to its criminal investigation . . . clearly fall within the scope of Exemption 7(C)").

Defendant has proffered a legitimate individual privacy interest in non-disclosure.

Conversely, Plaintiff has not identified a public benefit to disclosure. The Court concludes that the

EOUSA , FBI, ATF and DEA properly invoked Exemption 7(C) to protect the identities of these

categories of individuals.

*Exemption 7(D)*

Exemption 7(D) of the FOIA protects from disclosure those records or information compiled

for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential
> source, including a State, local, or foreign agency or authority or any
> private institution which furnished information on a confidential basis,
> and, in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation . . .
> information furnished by a confidential source.

5 U.S.C. § 552 (b)7(D). To invoke Exemption 7(D), an agency must show either that a source

provided the information to the agency under express assurances of confidentiality or that the

circumstances support an inference of confidentiality.  *See U. S. Dep't of Justice v. Landano*, 508

U.S. 165, 179-81 (1993). When determining the latter, the proper inquiry is "whether the particular

source spoke with an understanding that the communication would remain confidential." *Id*. at 172.

The government is not entitled to a presumption that all sources supplying information in the course

of a criminal investigation are confidential sources.  An implied grant of confidentiality may be

inferred, however, from the circumstances surrounding the imparting of the information, including

the nature of the criminal investigation and the informant's relationship to the target.  *See id*; *see*

*also Computer Professionals for Social Responsibility*, 72 F.3d at  905-06.

Under this exemption, the EOUSA,  FBI, ATF and DEA withheld reports of interviews with

witnesses to narcotics transactions involving Plaintiff and confidential source information by third

parties with first-hand knowledge of Plaintiff's drug trafficking operation.  *See* Boseker Decl., ¶ 70;

Vaughn Index, Document 24; Hardy Decl., ¶ 32; Graham Decl., ¶¶ 54-55; Wassom Decl., ¶¶ 56-64.

These  agencies contend that these witnesses are entitled to an implied grant of confidentiality.  *Id.*

Plaintiff was convicted of engaging in a continuing criminal enterprise and firearms offenses

"in the course of his involvement and orchestration of a major cocaine network." *United States v.*

*Truesdale*, 1996 WL 95970 at *1 (4th Cir. March 6, 1996).  Plaintiff was also associated with drug-

related murders and some of the information provided by the sources was related to those murders.

Hardy Decl., ¶ 32; Graham Decl., ¶ 54.   A conspiracy to distribute cocaine is "typically a violent

enterprise, in which a reputation for retaliating against informants is a valuable asset ..." *Mays v.*

*Drug Enforcement Admin.*, 234 F.3d 1324, 1331 (D.C. Cir. 2000).   In such cases, there is an

inference of implied confidentiality for those who provide information about the conspiracy.  *Id.*

Given the nature of the criminal actions in this case and that fact that the informants were witnesses

to Plaintiff's drug trafficking, the documents were properly withheld by the EOUSA, ATF, FBI and

DEA under 7(D) based on an inference of implied confidentiality.[5]


*Segregability*

If a record contains information that is exempt from disclosure, any reasonably segregable

information must be released after deleting the exempt portions, unless the non-exempt portions are

inextricably intertwined with exempt portions.  *See Trans-Pacific Policing Agreement v. United*

*States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  A Court errs if

it "simply approve[s] the withholding of an entire document without entering a finding on

segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242

n. 4 (D.C. Cir. 1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611 F.2d 738, 744 (9th

Cir. 1979)).

Having reviewed the agencies' Declarations , the Court concludes that the EOUSA, FBI,

ATF, DEA, and IRS have withheld only the records or portions of records exempt under FOIA's

provisions, and that all reasonably segregable material has been released. *See* Boseker Decl., ¶¶ 74-

75; Hardy Decl., ¶¶ 13-14; Graham Decl., ¶ 64; Wassom Decl., ¶¶ 69-87; Christopher Decl., ¶¶ 22-

23.  With respect to these records, the agency declarations and attachments adequately specify "in

detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn*,

484 F.2d at 827.

---

[5] The EOUSA, FBI and DEA also assert Exemption 7(F) as a basis for withholding the
document involving the informants. *See* Boseker Decl., ¶ 73; Hardy Decl., ¶¶ 35-36; Wassom
Decl., ¶¶ 65-68.  Since the records were properly withheld under 7(D), the Court will not address
the applicability of this exemption.

**Conclusion**

Based on the foregoing, the Court will grant Defendant's motions.    The only unresolved issues remaining in the this case are Plaintiff's motion for summary judgment and motions to strike and Defendant's motion to vacate default.   Plaintiff's motions will be denied and Defendant's motion granted.   An appropriate order accompanies this Memorandum Opinion.


  /s/
GLADYS KESSLER
United States District Judge

DATE:  July 21, 2005

21